Don Ralph ICKES, Plaintiff,

v.

BOROUGH OF BEDFORD and Richard Dean Kensinger, Jr., Individually and in his Official Capacity as a Bedford Borough Police Officer, Deputy Troy Nelson, Individually and in his Official Capacity as a Bedford County Sheriff's Deputy, Sheriff C.G. Reichelderfer, Individually and in his Official Capacity as Bedford County Sheriff and Deputy Luke Burkey, Individually and in his Official Capacity as a Bedford County Sheriff's Deputy, Defendants.

Civil No. 2009–37.

United States District Court, W.D. Pennsylvania.

Dec. 3, 2010.

Stephen D. Wicks, Altoona, PA, for Plaintiff.

Paul D. Krepps, Danielle M. Vugrinovich, Marshall, Dennehey, Warner, Coleman & Goggin, Neva L. Stanger, Campbell Durrant Beatty Palombo & Miller, P.C., Pittsburgh, PA, for Defendants.

### MEMORANDUM ORDER

KIM R. GIBSON, District Judge.

This matter comes before the Court on the Plaintiff's [Second] Motion to Amend (Document No. 51). Defendants Bedford County Sheriff's Deputy Troy Nelson, Bedford County Sheriff C.G. Reichelderfer and Bedford County Sheriff's Deputy Luke Burkey,[1] individually and in their official capacities (collectively "Bedford County Defendants") filed a Response to Plaintiff's Untimely Motion to

---

1. The spelling of this defendant's name in the documents docketed in this case appears as both "Burkey" and "Berkey."

Amend (Document No. 57). Defendants Borough of Bedford and Bedford Borough Police Officer Richard Dean Kensinger, Jr. also filed a Memorandum of Law in response to Plaintiff's Untimely Motion to Amend (Document No. 58). The Court now **DENIES** Plaintiff's Motion to Amend (Document No. 51).

\* \* \*

On February 13, 2008 Plaintiff was in the Bedford County Courthouse with a tape recorder which he alleges he intended to utilize for the purpose of conducting research at the public library. (Document No. 15, Amended Complaint ¶ 17). He was approached by Officer Kensinger who informed him that "he was violating the law by using a tape recorder in public without the consent of those who may be recorded." *Id.* at ¶ 16; *see* Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701, *et seq.* Mr. Ickes recorded this conversation with Officer Kensinger.[2] *Id.* at ¶ 18. Plaintiff advised Officer Kensinger that he was not

violating the law and started to walk away from him. *Id.* at ¶ 19. Officer Kensinger "grabbed the Plaintiff and forcefully attempted to stop him from leaving the area and to force him to turn off his tape recorder." *Id.* at ¶ 20. Plaintiff attempted to pull away from Officer Kensinger. *Id.* at ¶ 21. After the two separated, Officer Kensinger pulled out his taser and threatened to "tase" Plaintiff. *Id.* at ¶¶ 22–23. Officer Kensinger tased Mr. Ickes multiple times, which caused Plaintiff to fall to the ground in pain. *Id.* at ¶ 24.

In the Plaintiff's Motion to Amend (Document No. 51), Mr. Ickes raises a new claim, and now asserts that "the facts alleged in the Amended Complaint also support a claim for a violation of Plaintiff's First Amendment Rights." (Pl.'s Mot. To Amend ¶ 3.) Plaintiff discusses the First Amendment claim in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment pp. 10–13 (Document No. 47). However, Plaintiff failed to append a Proposed Amended Complaint with Plaintiff's Motion to Amend (Document No. 51).[3]

**2.** While certain recordings of police officers have been used by some for the purpose of entertainment on the Internet and other media, the interactions of police and members of the public are serious matters. An example of the use of these recordings for entertainment purposes is the "Don't tase me, bro" recording which became a YouTube sensation. With this excited utterance, University of Florida journalism student Andrew Meyer impacted American culture by becoming an Internet sensation. On September 17, 2007, Andrew Meyer attended a political forum and approached the microphone to ask a question of the guest speaker. After being told there was no more time to ask questions, and his microphone was shut off, Meyer refused to step down. University police attempted to take him away and physically restrained him. Meyer did not quit his protestations—and eyeing a police officer aiming a taser towards him—famously proclaimed, "Don't tase me, bro, don't tase me!" His entreaty was ignored, and an officer tased Meyer in his shoulder causing him to writhe in pain. By itself, this may seem like a random incident that happens countless times that people forget as soon as they see it—although perhaps not as quickly in light of Meyer's memorable quips. However, the Internet, as well as the pervasiveness and ubiquity of mobile video recording devices, have forever changed this dynamic. During Meyer's fracas, a local journalist recorded the altercation and posted it on YouTube. *See e.g., University of Florida student Tasered at Kerry forum* (Sept. 17, 2007), http://www. youtube.com/watch?v=6bVa6jn4rpE. The video

"went viral" immediately. In 2007, the Yale Book of Quotations designated "Don't tase me, bro!" as the most memorable quote of 2007. *See* Arthur Spiegelman, *"Don't Tase Me, Bro!" tops '07 memorable quote list,* Reuters (July 25, 2008), http://www.reuters.com/article/oddlyEnough News/idUSN1959512020071219?Ioc=inter stitialskip. To date, this video has been watched by nearly 5 million people on YouTube. Meyer achieved Internet immortality.

The actual serious nature of these police encounters with the public is illustrated, *e.g.,* John Wharton, *Woman is Arrested for Recording Deputy,* Southern Maryland Newspapers (June 16, 2010), http://www.somdnews.com/stories/ 06162010/entetopl62348_32195.shtml (A 27–year-old Marylander was arrested for recording a conversation with a police officer. The officer reported that "[s]he did admit to recording our encounter on her cell phone for the purpose of trying to show the police are harassing people."). *See also, When citizens film police, it shouldn't be a crime,* USA Today (July 14, 2010), http://www. usatoday.com/news/opinion/editorials/2010-07– 15-editoriall5_ST_N.htm#uslPageReturn (discussing motorcyclist who recorded traffic encounter with police officer—who approached him with gun drawn—and was charged with a felony count for violating Maryland's wiretap law). As a result, state lawmakers requested that the Attorney General advise whether the Maryland Wiretap Act applies to situations in which citizens record public activities of police officers.

■ This issue was recently considered in our district in *Matheny v. County of Allegheny, Pennsylvania,* Civil No. 2:09–1070, 2010 WL 1007859 (W.D.Pa. March 16, 2010). In *Matheny,* Plaintiff Elijah Matheny used his cellular telephone to record a conversation between two police officers without their consent. *Id.* at *1. After admitting he had recorded the conversation, Plaintiff was arrested for violating the Pennsylvania Wiretap Act. *Id.* Matheny subsequently brought a civil rights action under 42 U.S.C. § 1983, alleging retaliation for the exercise of his rights under the First Amendment. *Id.* The Court found that the First Amendment right asserted—the right "to record the actions of police officers in public"—was not "clearly established" on the date of Plaintiff's arrest. *Id.* at *3.

On this point there is no clear Third Circuit precedent, Citing an Eleventh Circuit Opinion, Chief Judge Scirica found that "videotaping or photographing the police in the performance of their duties on public property *may* be a protected activity." *Gilles v. Davis,* 427 F.3d 197, 212 n. 14 (3d Cir.2005) (citation omitted) (emphasis added).

The Court reasoned as follows:

The District Court suggested that even if *Heck* [*v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ] did not bar [plaintiff] Petit's claim, the First Amendment claim would fail nonetheless because videotaping does not constitute a protected First Amendment activity. But videotaping or photographing the police in the performance of their duties on public property may be a protected activity. *See*

*Smith v. City of Cumming,* 212 F.3d 1332, 1333 (11th Cir.2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."). More generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection. *See generally Bery v. City of New York,* 97 F.3d 689 (2d Cir.1996) (holding that sale of art and photographs are protected activities); *Porat v. Lincoln Towers Cmty. Ass'n,* 2005 WL 646093, at *4 (S.D.N.Y. Mar. 21, 2005) (noting that photography for more than mere aesthetic or recreational purposes enjoys some First Amendment protection); *Baker v. City of New York,* 2002 WL 31132880, at *5, 2002 U.S. Dist. LEXIS 18100, at *19 (S.D.N.Y. Sept. 26, 2002) ("It is undisputed that [plaintiff's] street photography is First Amendment expression[.]").

*Id.*

While this right may not be "clearly established" under current Third Circuit precedent, the issue of police officers arresting citizens for recording them in public has recently been brought to the forefront of the cultural zeitgeist. Recordings of police officers have drawn the ire of law enforcement agencies nationwide.[4] Perhaps recognizing the importance of this issue, subsequent to the issuance of the opinion in *Matheny,* the Allegheny County district attorney entered into a settlement with the Plaintiff, by "redistributing a memo explaining that it is not against the law to videotape a police officer in the course of doing his duty."[5] Under

---

**3.** The failure to provide a Proposed Amended Complaint with a Motion to Amend provides a sufficient basis for the Court to deny a request to amend a complaint. *Lake v. Arnold,* 232 F.3d 360, 373–374 (3rd Cir.2000). The Court chooses to deny the Motion to Amend on different grounds.

**4.** Dennis J. Slocumb and Rich Roberts, *Respect officers' rights,* USA Today (July 14, 2010) (The "problem [of the International Union of Police Associations, AFL–CIO] is not so much with the videotaping as it is with the inability of those with no understanding of police work to clearly and objectively interpret what they see. Videotapes frequently do not show what occurred be-

fore or after the camera was on, and the viewer has no idea what may have triggered the incident or what transpired afterwards.").

**5.** Paula Reed Ward, Pittsburgh Post–Gazette (July 15, 2010), http://www.post-gazette.com/pg/10196/1072887–455.stm#ixzz0u92KHZhx ("The Allegheny County district attorney's office has agreed to settle a federal lawsuit against it by redistributing a memo explaining that it is not against the law to videotape a police officer in the course of doing his duty. The unusual settlement—which includes no financial terms—came about after a Hill District man was charged with violating state wiretap laws in April 2009.").

this memorandum, citizens can record interactions with police officers without fear of violating the Wiretap Act.[6]

However, because Plaintiff failed to amend his complaint in accordance with this Court's Practices and Procedures, the Court denies his motion for several reasons. First, this motion is not just untimely—it is extremely untimely. Plaintiff filed his original complaint asserting Fourth Amendment claims against Defendants Borough of Bedford and Richard Dean Kensinger on February 17, 2009. The parties engaged in mediation in July 2009 but failed to resolve the case. Plaintiff filed his first amended complaint on August 7, 2009, asserting Fourth Amendment Claims against County Deputy Troy Nelson, Sheriff C.G. Reichelderfer, and Deputy Luke Burkey. The Court imposed a December 1, 2009, deadline for all amended pleadings. Plaintiff did not amend his pleading again prior to the December 1, 2009, deadline. Discovery was closed on April 15, 2010. All Defendants filed Motions for Summary Judgment on June 1, 2010. On July 2, 2010, Plaintiff filed his second motion to amend his complaint—nearly 8 months after the Court's imposed deadline. Plaintiff sought to amend his complaint to add the First Amendment claim. On July 2, 2010, Plaintiff also filed his brief in opposition to Defendants' motions for summary judgment. In this brief, Plaintiff relied on the First Amendment claim—hoping that his motion would be granted—in opposing summary judgment.

■ Plaintiff has had ample opportunities to assert the First Amendment claims previously, but instead delayed more than four months after the close of the *extended* discovery period, and after the County and Borough Defendants filed summary judgment

motions challenging the Fourth Amendment claims. The Court's broad discretion to permit late amendments to the pleadings is tempered "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or is prejudicial to the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001). In this case, the delay is "undue," and "prejudicial to the opposing parties," and to permit this amendment would "place[ ] an unwarranted burden on the court." *Id.*

■ In addition to his untimely filing of this motion, Plaintiff provides no reason why the Court should entertain this motion, beyond noting that "during the course of responding to [Summary Judgment] Motions, Counsel for the Plaintiff realized that the facts alleged in the Amended Complaint also supported a claim for a violation of Plaintiff's First Amendment rights." That is the extent of the explanation. "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Sampath v. Concurrent Techs. Corp.,* Civ. No. 3:2003–264, 2006 WL 3231954 at *2 (W.D.Pa. Nov. 7, 2006) (Gibson, J.). No adequate explanation was provided why the Plaintiff could not have previously amended the complaint during the nearly four month period between August 7, 2009, and December 1, 2009, when amended pleadings were permitted, nor even during the extended discovery period ending on April 15, 2010.

Contrary to Plaintiff's assertions, amending the complaint would require additional costly and time consuming discovery. Beginning another round of discovery would be quite burdensome of the Defendants, as well as the Court, and constitute an undue prejudice. *Cureton,* 252 F.3d at 274 (The deter-

---

6. This issue has also arisen in Maryland, following a rash of notorious arrests of citizens recording police officers. *See* Justin Fenton, *Recording Police likely OK, attorney general says,* Baltimore Sun (July 30, 2010), http://www.baltimoresun.com/news/maryland/bs-md-attorney-general-wiretap–20100730,0,3365447,full.story. The Attorney General opined that although Maryland Courts have not directly decided this issue, in light of "the suggestion made in the 2000 [Attorney General] Opinion and with the holdings of

the courts in most other states construing state eavesdropping statutes." a Maryland Court "could hold that a police stop of an individual necessarily is not a 'private conversation' and therefore does not involve an oral communication covered by the State Wiretap Act." *See* Letter from Douglas F. Gansler, Maryland Attorney General to Samuel I. Rosenberg, Delegate (July 7, 2010), available at http://www.oag.state.md.us.Topics/WIRETAP_ACT_ROSENBERG.pdf. Accordingly, a citizen recording an interaction with the police could not violate the Wiretap Act.

mination of whether undue prejudice would occur includes "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."). Accordingly, this motion must be denied. It is so ordered.